Filed 5/23/25  In re Robert R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ROBERT R., JR., et al., Persons Coming Under the Juvenile Court Law. | B340813 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>MONICA P.,<br><br>        Defendant and Appellant;<br><br><br>G.A., SR.,<br><br>        Defendant and Respondent. | Los Angeles County Super. Ct. No. 23CCJP03318A, B, C & D |

        APPEAL from an order of the Superior Court of Los Angeles County. Kristen Byrdsong, Commissioner. Affirmed.
        David Dickey, under appointment by the Court of Appeal, for Defendant and Appellant Monica P.
        No appearance for Plaintiff and Respondent.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Respondent G.A., Sr.

Lori Siegel, under appointment by the Court of Appeal, for Minors.

_____

Monica P. (Mother) appeals the juvenile court's order, pursuant to Welfare and Institutions Code[1] sections 362.4, subdivision (a), and 364, subdivision (c), terminating jurisdiction over the children's dependency cases. The order awarded sole physical custody over the children to G.A., Sr. (Father A.), joint legal custody to Father A. and Mother, and afforded Mother only monitored visitation. Mother raises a cognizable challenge only to the terms of visitation. Finding no abuse of discretion, we affirm.

## BACKGROUND

These proceedings involve four of Mother's children,[2] Robert R., Jr., (born 2013), G.A., Jr., (born 2014), K.A. (born 2015), and Z.A. (born 2022). Father A. is the presumed father of each of the children. Robert has a different biological father, Robert R., Sr., but no relationship with him.

The family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in September 2023. About three months before, Father A. had left the family home with the children and moved in with Paternal Aunt. Father A. did so out of concerns over the conditions of the family home, including a rat and cockroach infestation, and

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

[2]  Mother had a fifth child who was removed from Mother in 2009 and adopted in 2013 after Mother failed to reunify with him.

2

Mother's erratic behavior, which he suspected was the result of methamphetamine use.

A referral to DCFS alleged Mother used drugs and Father A. emotionally abused the children and was violent towards Mother. After investigating, DCFS obtained from the juvenile court an order detaining the children from Mother. A section 300 petition followed, alleging Mother's substance abuse and emotional problems placed the children at risk of harm. DCFS made no allegations against Father A. Though Robert was initially placed with his Paternal Grandmother, the court later ordered all children maintained with Father A.

After some delays, the juvenile court held a combined jurisdiction and disposition hearing in February 2024. By that time, Mother had acknowledged her drug addiction and attendant mental health issues and was working hard to address them. The court sustained the petition against Mother. In doing so, it noted grave concerns based on statements of the three eldest children. K.A. did not want to talk with Mother "because she would beat him with a wire and wooden objects . . . ." Robert reported Mother was "mean to them and hit them while [she] was on drugs . . . ." And G.A., Jr., wanted "[no] communication with Mother because she was mean and hit them while she was on drugs." These children also recounted the conditions of the home when they lived with Mother, noting infestations of rats, cockroaches, and other insects, and Mother habitually smoking drugs there. The court ordered the children removed from Mother. It also ordered reunification services for Mother and scheduled a section 364 six-month review hearing.

The six-month review hearing took place in September 2024. By that time, Mother had made excellent progress in addressing her substance abuse and mental health issues. She

had completed her drug and alcohol treatment program, was drug testing consistently with only negative results, and was taking classes beyond those ordered to support her sobriety.

Mother was also making substantial efforts, during DCFS-approved unmonitored visitation, to mend her relationships with her children. Her progress in this regard, however, was limited. In their time away from Mother's home, the children were thriving and enjoying newfound stability under Father A.'s exclusive care. The older three were also undergoing weekly therapy to address past trauma, fear, anger, and anxiety. Nevertheless, they still harbored negative feelings towards Mother because of her past behaviors and were unwilling to accept that she had changed her ways. In the last minute information for the juvenile court filed shortly before the six-month review hearing, DCFS reported "Robert, [G.A., Jr.,] and [K.A.] all shared that they never want to see [M]other again and wish they did not have to talk to her. [The social worker] asked the children what they feel that [M]other can do to improve her relationship with them and they shared there was nothing she could do. . . . [The social worker] asked if they feel they could forgive [M]other and they said that they will not as she is a 'bad person.'"

The children's antipathy towards Mother was on full display during unmonitored visits occurring shortly before the six-month review hearing. During one scheduled to take place at a McDonald's restaurant, Robert refused to get out of the car and Mother had to call a Paternal Aunt to help. During another, K.A. and G.A., Jr. were being "disrespectful" towards Mother and claimed they were going to open the car doors while she was driving them, requiring her to pull over on the freeway to activate the child locks. She again called upon Paternal Aunt for

help. "Mother shared that she would love to spend more time with her children, but due to them treating her badly, telling stories about her abusing them, and doing various untrue things to them, she [wa]s only visiting once a week. Mother shared that she ha[d] been spending the rest of the week working and going to counseling to work on the hurt from her children rejecting her so harshly."

All parties agreed at the hearing that terminating jurisdiction was an appropriate option in light of Mother's progress. DCFS recommended that Mother and Father A. share legal custody of the children, with Father A. having physical custody and Mother allowed unmonitored visitation. Father A. agreed with these recommendations, provided that he had "veto power" in legal matters and the children not be forced to visit if they refused to. Mother asked the court to continue the hearing to allow her conjoint counseling with the children, but, in lieu of that, requested either "joint, joint custody or unmonitored visits for Mother." Counsel for the children relayed that "they want to live with [Father A.] and do not want to live with their [M]other or have unmonitored visits with her."

The juvenile court ordered that Father A. have sole physical custody of the children and share, with Mother, joint legal custody subject to Father A.'s tie-breaking authority. It ordered only monitored visitation for Mother. The court based this decision on "the children's very strong feelings of not feeling safe visiting [M]other because of the physical and traumatic abuse they've endured at the hands of [M]other while she was using substances, and they don't feel safe being alone with her." It further explained, "They are traumatized . . . . They haven't processed their trauma. And because of the trauma inflicted by [Mother], they are not ready to have unmonitored. I'm not going

to have them have unmonitored today when they repeatedly express, they're scared of her. They've been saying this for almost a year now. . . . I'm not going to force them."

Mother timely appealed.

## DISCUSSION

### I.   The Exit Order Reflects No Abuse of Discretion

Mother contends the juvenile court erred by ordering her visits monitored. For the reasons that follow, we disagree. In the final paragraph of the discussion part in Mother's opening brief, she appears to suggest the court's "refus[al] to grant [her] joint [physical] custody as recommended by [DCFS]" was also error. We treat this contention as forfeited. (See *In re J.S.* (2014) 228 Cal.App.4th 1483, 1497–1498 [argument " 'not stated under a separate heading, . . . not sufficiently developed, and . . . unsupported by citation to authority' " was forfeited], overruled on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

#### A.   Governing Law and Standard of Review

Section 362.4, subdivision (a) permits juvenile courts to issue family law orders governing custody or visitation when terminating jurisdiction over dependent children. (*Ibid.*) Such an order is commonly called an "exit order." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.)

When making an exit order, " 'the [juvenile] court's focus and primary consideration must always be the best interests of the child.' " (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.) In determining those interests, the court " 'must look to the totality of a child's circumstances . . . .' " (*In re J.T.* (2014) 228 Cal.App.4th 953, 963.) "[Juvenile] courts have broad powers and have the widest discretion to fashion a custody and visitation

6

plan that is in the child's best interest." (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1162.)

We review exit orders issued pursuant to section 362.4 for abuse of discretion. We will not disturb a juvenile court's decision " 'unless the court " ' "exceed[s] the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' [Citation.] ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' " (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)

### B. Analysis

We perceive three grounds on which Mother contends it was an abuse of discretion to limit her to monitored visitation. First, she argues it was contrary to DCFS's recommendation. This is unpersuasive because juvenile courts are not bound by DCFS's recommendations at the section 364 hearing. (See *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1155 [recommendation to terminate jurisdiction not binding where retention of jurisdiction is warranted].)

Second, Mother notes she had been having unmonitored visitation before the exit order entered. She offers no authority that, having had unmonitored visitation during the case, she was entitled to unmonitored visitation in the exit order. "When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

Third, Mother argues the children would not be at risk during unmonitored visits because it was the children who

7

"responded negatively to her" in their recent unmonitored visits, not the other way around. Mother further contends she was not likely to endanger the children in the future because she had not placed the children in danger during the visits, had been sober for over six months, had completed her case plan, and had developed improved parenting skills. While this is all correct and certainly relevant to the children's best interests, it is not the entire analysis. The absence of danger to a child does not entitle the parent to custody or unmonitored visitation. "Section 362.4 does not require a finding of detriment under any circumstances; as a result, courts have applied the best interest standard in determining appropriate custody and visitation exit orders at this stage." (*In re J.M.* (2023) 89 Cal.App.5th 95, 113; see also *In re John W.* (1996) 41 Cal.App.4th 961, 974 [that neither parent "pose[s] any danger to the child does not mean that both parents are equally entitled to half custody"].)

Here, the juvenile court properly focused on the children's best interests in fashioning the exit order. Among the factors it considered were the preferences of the children. It is proper to consider such preferences, so long as they are not the exclusive or dispositive factor. (See, e.g., *In re Julie M.* (1999) 69 Cal.App.4th 41, 50–51 [child's aversion to visiting an abusive parent is proper factor for consideration in determining visitation so long as it is not the "the *sole* factor"]; *In re S.H.* (2003) 111 Cal.App.4th 310, 317 [child's input a factor to consider in administering visitation]; see also *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087 [child's wishes not determinative of best interests but still probative].) The court also found the children were traumatized by Mother's past behavior and genuinely afraid to be alone with her. And, without saying so expressly, it implied the presence of a monitor might make the children more amenable to visits and

less likely to refuse them. The court said it would not "force them" to have unmonitored visitation. And after reiterating visitation would be monitored for all children, the court explained "[the children] are so traumatized and they refused [visitation] every time up until this point." Juvenile courts properly consider "possible adverse consequences if a visit is forced against the child's will" in setting terms of visitation. (*In re S.H.*, *supra*, at p. 317.)

We cannot say the juvenile court exceeded the bounds of reason in requiring a monitor for Mother's visits under these circumstances. However, though final for purposes of appeal, the court's exit order is subject to modification in family court upon a showing of adequately changed circumstances and that it would serve the children's best interests. (§ 302, subd. (d).) At the time of the order, the children were in therapy to address their fear and anger stemming from past trauma. We are hopeful that they benefit from these services as Mother has from hers.

## DISPOSITION

The juvenile court's exit order is affirmed.


RICHARDSON, J.

WE CONCUR:


ASHMANN-GERST, Acting P. J.


CHAVEZ, J.

9